OPINION OF THE COURT
Howard A. Zeller, J.
Defendant New York State Bar Association moves to dismiss the amended complaint of plaintiff Betty O. Muka *898 on several grounds, including collateral estoppel, res judicata, the Statute of Limitations, and failure to state a cause of action. Mrs. Muka, who appears pro se, has filed an affidavit and exhibits in opposition.
THE AMENDED COMPLAINT
The amended complaint essentially is based upon a conspiracy theory. Paragraph 4 alleges defendant New York State Bar Association on or before March 27, 1975 became “a member of a conspiracy for the purpose of impeding, hindering, obstructing, and defeating, by way of false and malicious criminal prosecution * * * with purposeful intent to deny citizen Betty O. Muka the equal protection of the Penal Law * * * the common law, and the federal law * * * and the provisions of the United States Constitution and the New York State Constitution”. Paragraph 5 alleges the State Bar Association conspired with one or more of over 140 listed persons and entities, including Richard J. Bartlett, City of Binghamton, County of Chemung, Louis Greenblott, J. Clarence Herlihy, Ithaca Teachers Association, Harold E. Koreman, A. Franklin Mahoney, Gerald Stern, Cornell Law School, Joseph W. Bellacosa, the United States, Paul J. Yesawich, Jr., the Appellate Division, Third Department, Hugh L. Carey, New York State Court of Appeals, the State of New York, the New York State Commission on Judicial Conduct, Howard G. Munson, D. Bruce Crew, Robert E. Fischer, Richard F. Kuhnen, David F. Lee, Jr., Frederick B. Bryant, and Howard A. Zeller, the last six being Supreme Court Justices in the Sixth Judicial District. The complaint continues for several pages reciting various grievances and concludes by demanding judgment of $20,000,000,000.
RULE OF NECESSITY
I have been a defendant in prior lawsuits brought by Mrs. Muka, I am named as a conspirator in this action, and I am a member of the New York State Bar Association. Under normal circumstances I would recuse myself from this case. But the circumstances here are unusual. Mrs. Muka has either sued or accused of crime all Supreme Court Justices of the Sixth Judicial District, one of whom she once took into custody by means of a “citizens arrest”. *899 Since 1982 Mrs. Muka has had pending an action in which the named defendants are the “Supreme Court of the State of New York and its judges, law clerks, clerks, employees and staff, as officials and as private individuals.” All Justices of this Judicial District, and probably elsewhere in the State, are members of the New York State Bar Association. It has been Mrs. Muka’s habit to sue, attack as incompetent, or call for the removal of any Judge who does not render a decision to her liking. Thus, every Supreme Court Justice in the State would have a reason for declining to sit in this case. The “Rule of Necessity” must be applied. “As stated by Sir Frederick Pollock, that rule mandates that ‘although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise’ ” (Matter of Morgenthau v Cooke, 56 NY2d 24, 29, 30, n 3). This rule is especially applicable to cases where a pro se litigant has “manifested an intent to sue all those who try” to hear the case (see Eismann v Miller, 101 Idaho 692, 696, and authorities cited therein). Here, Mrs. Muka has named as defendants the “Supreme Court of the State of New York and its judges”. “A judge is not disqualified merely because a litigant sues or threatens to sue him” (United States v Grismore, 564 F2d 929, 933, cert den 435 US 954). So, I shall decide the motion.
THE MOTION
This is not Mrs. Muka’s first lawsuit against the State Bar Association. By process dated December 20,1977, Mrs. Muka commenced an action in the United States District Court for the Northern District of New York against Kenneth Cohn and over 100 other defendants, including the New York State Bar Association, in which she claimed the existence of a conspiracy to deprive her of her civil rights. The action was dismissed on the merits by United States District Court Judge Howard G. Munson in a memorandum decision and order dated October 30,1978 in which he ruled, among other things, that “[t]he complaint in this case is ‘patently without merit’ and ‘wholly insubstantial and frivolous’ ”.
*900 By a summons and complaint dated August 16, 1978 filed in the United States District Court, Mrs. Muka commenced litigation against United States District Court Judge- James T. Foley and a six-page list of over 100 defendants including the New York State Bar Association. Once again, the gravamen of the complaint was an alleged conspiracy to deprive Mrs. Muka of her civil rights. By a memorandum decision and order dated October 30, 1978, Judge Munson found the allegations in the complaint “ ‘patently without merit’ and ‘wholly insubstantial and frivolous’ ” and he dismissed it with prejudice.
On October 19, 1981, Muka commenced a third action, this one in State Supreme Court, against the State Bar Association by service of a summons with notice in which she claimed a conspiracy to deprive her of her civil rights. The State Bar Association moved to dismiss after Mrs. Muka failed to timely serve a complaint. Invoking the principles of Barasch v Micucci (49 NY2d 594), this court (Ellison, J.) dismissed her complaint in a decision dated October 13, 1982.
The instant litigation is the fourth time that an action against the State Bar Association has been commenced by Mrs. Muka based mainly upon the conspiracy theory. While certain specific allegations contained in the amended verified complaint in the present action are different from those set forth in the United States District Court lawsuits, the essential character of the allegations remains the same, namely, that the State Bar Association, in concert with various public officials and private individuals, conspired to deprive Mrs. Muka of her civil rights. The central allegation in the amended verified complaint in this action is that the conspiracy was entered into “on or about the 27th day of March, 1975.”
Res judicata applies not only to issues which were actually raised in a prior disposition on the merits, but also as to issues which could have been raised. In the words of the Fourth Department in Chisholm-Ryder Co. v Sommer & Sommer (78 AD2d 143, 144): “It is familiar law that the doctrine of res judicata or claim preclusion forecloses a party from relitigating a cause of action which was the subject matter of a former lawsuit or from raising issues or *901 defenses that might have been litigated in the first suit (see Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 495).” In view of the similarity of the allegations contained in the amended complaint compared to those in the previous United States District Court lawsuits, the principle of res judicata applies.
“On a motion addressed to the sufficiency of a complaint the facts pleaded are presumed to be true and accorded every favorable inference * * * On the other hand, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration.” (Roberts v Pollack, 92 AD2d 440, 444.)
The amended complaint in the present action contains bare legal conclusions and inherently incredible allegations concerning the State Bar Association. The amended complaint fails to specify the acts undertaken by the State Bar Association in furtherance of the alleged conspiracy to deprive Mrs. Muka of her rights. For example, Mrs. Muka alleges the conspirators maliciously instituted a criminal charge of unlawful imprisonment in the second degree against her and that her conviction “became unconditionally reversed on November 28, 1981” and terminated in her favor. (See People v Muka, 72 AD2d 649, application for lv to opp den 50 NY2d 847; 440 F Supp 33.) Lacking from the complaint is any allegation of an act connecting the State Bar Association with the alleged unlawful imprisonment prosecution.
General conclusory allegations of a conspiracy are not sufficient to state a cause of action. The complaint and amended complaint fail to state a cause of action.
THE PRO SE LITIGANT
Mrs. Muka is a middle-aged married woman who is a graduate of a law school but not an attorney at law. She has engaged in pro se litigation for over 10 years (see Muka v Board of Educ., 41 AD2d 882), and has commenced hundreds of actions in the courts of this State. For the most part they lacked merit and have been dismissed.
Many of her summonses name multiple defendants. Her action in the United States District Court against United *902 States District Court Judge James T. Foley (complaint dated Aug. 16, 1978) names as other defendants Governor Hugh Carey, New York State Attorney-General Louis Lefkowitz, United States Attorney General Griffin Bell, the New York State Legislature “including both houses and each and every member thereof”, the American Bar Association, Chief Judge Charles Breitel of the New York State Court of Appeals, Dean Roger Cramton of the Cornell Law School, and a host of Judges, District Attorneys, public officials, private attorneys, and private citizens.
During the past couple of years, Mrs. Muka also has commenced actions against single defendants, the nature of each action being conspiracy. The defendants include Judges Bryant, Friedlander, Clyne, Barrett, Vitanza, Swart wood, Fischer, Kuhnen, Lee, former Judge Bruce Dean and former Chenango County Sheriff Joseph Benenati.
In addition to the action of August 28, 1982 which alleges conspiracy against the Supreme Court of the State of New York and its Judges, law clerks, clerks, secretaries, court reporters and staff, Mrs. Muka has pending a similar action against the Court of Appeals of the State of New York and its Judges, law clerks, clerks, employees and staff; another one against the Appellate Division, Third Department, of the State of New York, and its Judges, clerks, law clerks, secretaries and staff; and other similar actions pending against the New York State Commission on Judicial Conduct, the County Court of Tompkins County, the Governor of New York State, the New York State Police, the City Court of the City of Ithaca, and the Attorney-General of New York State.
Mrs. Muka has filed appeals in civil matters throughout the years with little success. (See, for instance, Muka v Bryant, 58 NY2d 1115, mot to vacate order den 59 NY2d 667; Muka v Heffron, 56 AD2d 682, opp dsmd 42 NY2d 823, cert den 435 US 963; Muka v Williamson, 53 AD2d 950; Matter of Muka v Cornell, 48 AD2d 944.)
By 1975, Mrs. Muka had lodged 333 charges in Tompkins County against various public officials. (See statement in People v Muka, 72 AD2d 649, supra.) None resulted in trial or conviction.
*903 The right to represent oneself in both civil and criminal matters is basic to our system of justice. Section 6 of article I of the New York State Constitution gives a person accused of crime the right to “appear and defend in person” in “any trial in any court”. A party can both prosecute and defend civil actions in person (CPLR 321, subd [a]), subject to narrowly defined exceptions such as infancy or incompetency.
However, the right to appear pro se is not unlimited. A Judge “has both the duty and the power to protect courts, citizens and opposing parties from the deleterious impact of repetitive, unfounded pro se litigation.” (People v Dunlap, 623 P2d 408, 410 [Col].) Finally, all litigants have a right to impartial and considered justice. Insofar as any litigant unnecessarily consumes inordinate amounts of judicial time and energy, he or she deprives other litigants of their proper share of these resources. A balance must be kept.
“[W]hen it becomes clear that the courts are being used as a vehicle of harassment by a ‘knowledgeable and articulate experienced pro se litigant’ * * * the issuance of an injunction is warranted.” (Kane v City of New York, 468 F Supp 586, 590.)
The Supreme Court of Colorado has handed down decisions involving abusive pro se litigants. In Shotkin v Kaplan (116 Col 295, cert den sub nom. Shotkin v Friedman, 333 US 864), a pro se plaintiff “educated for the bar” had brought a multitude of cases in the Colorado State and Federal courts, which for the most part lacked any semblance of merit. The court noted that while the plaintiff possessed the learning of lawyers he was not bound by the Bar’s disciplinary rules, and the only way for the trial and appellate courts to return to their normal duties would be if he employed counsel. The court barred plaintiff from bringing any actions pro se in the future in the Colorado State courts. In People v Spencer (185 Col 377, 382) the pro se plaintiff responsible for the “cornucopia” of litigation was described as the “master of the summons, the architect of the complaint and the trier of none”. The Colorado court without qualification enjoined plaintiff from proceeding pro se as plaintiff in the courts of Colorado. In Board of *904 County Comrs. v Barday (197 Col 519) the court enjoined a litigant from appearing pro se in any present or future litigation arising out of his marital problems. The court carefully noted that it was not barring but was merely limiting plaintiff’s access to the Colorado courts. He was still free to appear pro se in his own defense and could still appear in any action through an attorney of his choice.
The courts in Illinois have also enjoined the prosecution of baseless pro se suits. In Eddy ex rel. Pfeifer v Christian Science Bd. of Directors (62 Ill App 3d 918) a trial court dismissed a pro se complaint and permanently enjoined plaintiff from initiating or proceeding with similar litigations in the State and Federal courts in Illinois. The appellate court affirmed the dismissal of the complaint and affirmed the injunction insofar as it related to the Illinois State courts.
Other courts faced with abusive pro se plaintiffs have barred them from commencing new actions until leave of court is obtained first (see, e.g., Eismann v Miller, 101 Idaho 692, supra; Rudnicki v McCormack, 210 F Supp 905, 911, requiring leave before continuing or commencing “this or any other legal proceedings in any court against any state or federal judge, officer or employee for actions taken in the course of their official duties as such judge, officer or employee”; Matter of Green, 669 F2d 779, requiring leave of court before commencing any civil action, imposed upon a pro se plaintiff who had commenced between 600 and 700 actions in 10 years.)
In Matter of Martin-Trigona (_ F Supp _), a pro se litigant had commenced over 250 actions arising from a bankruptcy dispute. He was enjoined from making any appearance either pro se or through counsel in the United States District Court in Connecticut without leave of court; he was enjoined nationwide from commencing any action in any Federal or State court arising from his bankruptcy proceeding; enjoined nationwide from commencing any action in any court without obtaining leave of that court after following a detailed procedure; enjoined from filing any paper in any case he is not a party to without leave of court; and enjoined from serving any legal papers on any *905 one unless an action has been filed with a court (order dated June 17, 1983 [Cabranes, J.]).
At least two cases in New York have discussed the scope of the right to appear pro se in a civil action. In Hochman v Hochman (NYLJ, April 8, 1981, p 12, col 4) the court denied the request of a wife in a contested matrimonial action to represent herself due to her disruptive behavior and delaying tactics. In Matter of Rappaport (109 Misc 2d 640), a litigant’s violent actions and disruptive courtroom practices caused the court to revoke his right to appear pro se.
Betty O. Muka has pursued legal actions and proceedings with persistence, vigor and disregard for logic and the rights of others. Most of her actions have been scandalous, vexatious and burdensome. She suspects conspiracies that do not exist. In this action, Mrs. Muka avoided paying an index fee by not obtaining an index number when this action was commenced. The burden of securing it then fell upon defendant when this motion to dismiss the complaint was initiated. Mrs. Muka has similarly avoided the burden of securing an index number in numerous other actions.
In addition to the dismissal of the complaint and the amended complaint, defendant seeks such other relief as may be just and proper. Mrs. Muka’s pro se privileges will be restricted insofar as future actions against this defendant are concerned. More extensive limitations may be considered if she continues to misuse her pro se privileges.
CONCLUSIONS
The motion to dismiss the amended complaint is granted.
A motion to dismiss the complaint was brought before the amended complaint was served. The motion is granted.
Betty 0. Muka is enjoined, restrained and prohibited from hereafter commencing any civil action against the New York State Bar Association, its officers or employees, in any court of New York State or any political subdivision thereof unless she be represented in said action by an attorney duly licensed to practice law in New York State and who is actively engaged in the practice of law in New York State and unless she or her attorney obtains an index *906 number for the action and affixes the index number to the summons prior to service.
A defendant against whom an action is commenced by Betty 0. Muka in violation of this injunction, may apply for sanctions including, but not limited to, an ex parte order to dismiss the action.