**Frank A. CARTER, Jr., Chief Disciplinary Counsel**

v.

**Betty O. MUKA.**

**No. 85–188–M.P.**

Supreme Court of Rhode Island.

Dec. 5, 1985.

Frank A. Carter, Chief Disciplinary Counsel, Providence, Kathleen Managhan, Asst. Disciplinary Counsel, Newport, for petitioner.

Betty O. Muka, Providence, for respondent.

OPINION

PER CURIAM.

This opinion supplements an order entered by this court in the above-entitled disciplinary proceeding on April 19, 1985.[1] In the order, this court determined that the respondent, Betty O. Muka, (1) had violated certain disciplinary rules and (2) was not qualified to practice law in this jurisdiction.

1. *See* appendix A.

The court suspended her right to practice pending publication of this opinion and the imposition of any further disciplinary action.

The respondent has been a member of the Rhode Island Bar since June 30, 1983. Within the year of her admission, the court's disciplinary counsel lodged two disciplinary petitions with the court's disciplinary board. The petitions charged respondent with unprofessional conduct while acting as counsel to a plaintiff in a Superior Court medical-malpractice action. The trial justice had directed a verdict for the defendants in the malpractice action, and the charges of unprofessional conduct stemmed from the submission of two documents filed by respondent in the malpractice case.

One petition concerned a document entitled "Objections and Statement of Facts concerning Judge Thomas H. Needham (and others)." The other petition was generated by a document designated by the respondent "RCP Rule 59 Motion for a New Trial" with a supporting affidavit.

In each of these documents, respondent made a variety of unsupported allegations against several judges, attorneys, court personnel, and members of the public. The charges included the crimes of conspiracy, obstruction of justice, suborning perjury, "pay offs," and membership in the "Judicial Mafia."

Throughout the lengthy hearings conducted before this court, respondent demonstrated a total lack of knowledge of basic substantive and procedural law. She failed to recognize the fact that she had altered an exhibit in a case on appeal to this court and freely admitted that she stapled various papers together, added a more complete description of the documents, and provided an index to the newly organized papers "in order that the court would be able to understand what they were."

In filing a motion for a new trial, respondent obviously was unaware that this court

in *Izzo v. Prudential Insurance Co.*, 114 R.I. 224, 230–31, 331 A.2d 395, 398–99 (1975), ruled that a motion for a new trial following the direction of a jury verdict is a nullity, and as such, the motion would not extend the time within which an appeal could be taken. *Izzo* also emphasized that an appeal that was not taken within twenty days of the entry of a judgment pursuant to the direction of a verdict was untimely and completely ineffective in obtaining appellate review.

During her own testimony and that of other witnesses, respondent consistently exhibited and readily conceded that "some of the problems that [she had] with—with the hearing and I think with courts in general, is the custom of separating fact from law."

Despite repeated attempts by the members of this court to explain the proceedings, respondent was unable to grasp why she was before this court and was convinced that the burden of proof had been unjustly shifted. Although she continually asserted that none of the individuals who testified had told the truth, she failed to serve process on those individuals she claimed would support her outrageous allegations.

In the course of her rambling, disordered, and at most times irrelevant testimony, respondent discussed the affidavit she had filed with her motion for a new trial. She testified that the judge, attorneys, and witnesses had a duty not only to deny her allegations before this court but also to dispute her allegations of a payoff, conspiracy, and suborning perjury by filing a counteraffidavit. Because no counteraffidavit was filed, respondent, apparently believing she was dealing with a motion for summary judgment, was convinced that her affidavit must be taken as true and her allegations admitted as a matter of law. However, respondent failed to present any evidence to support her allegations, except for her own incredible testimony. Thus, the members of this court, sitting in a unique position as factfinders, are convinced that her reckless allegations are unworthy of belief.

After our review of the testimony and evidence in the case, we find that the chief disciplinary counsel, through the capable aid of his assistant counsel, has proven not only by clear and convincing evidence but also beyond a reasonable doubt that respondent has violated each of the disciplinary rules set forth in his two petitions. Said disciplinary rules are set forth in full in appendix B of this opinion. We note especially that respondent did knowingly or with reckless disregard of the truth make false and extravagant accusations against Justice Needham. We further note that by her conduct during the trial of *Raymond Souza v. Rosalind Chaset et al.*, No. 78–1969–C.A., and by her allegations in documents filed in support of a motion for new trial, she has engaged in vituperative and unsupported accusations against Justice Needham, members of the bar, and other persons as set forth in our order, either with actual knowledge of the falsity of said accusations or with reckless disregard of whether they were true or false.

In determining an appropriate disciplinary sanction in respect to respondent, we must consider not only her actions in regard to the specific charges against her that have been proven before us but also conduct of a similar type set forth in reported cases of the State of New York. In *People v. Muka*, 72 A.D.2d 649, 421 N.Y. S.2d 438 (1979), the Appellate Division of the Supreme Court of the State of New York in 1979 sustained a conviction of respondent for unlawful imprisonment in the second degree arising out of her attempts to impose a citizen's arrest upon the District Attorney of Tomkins County of New York because he had refused to bring 333 charges against various public officials for activities perceived by her to be in violation of the criminal law. An examination of that opinion indicates that respondent had previously been admonished for not only making false accusations but also attempting subsequently to enforce them by physi-

cal force in spite of the entreaties of law-enforcement officers to the contrary. In that opinion the appellate division characterized her brief as "exceedingly rambling."

Earlier, in connection with the same case, respondent had sought to remove the charges pending against her, after a jury trial had been completed, to the Federal District Court. *See People of the State of New York v. Muka*, 440 F.Supp. 33 (N.D.N.Y.1977). The case was returned to the state court, and in the course of the remand opinion, the Federal District judge noted that during that proceeding respondent had asked the court to allow her to file a criminal information and complaint against a number of named individuals. The Federal District judge noted that a private citizen had no right to prosecute a federal crime. In that litigation respondent also accused the Federal Court of treating her case specially and unfairly in regard to scheduling of a motion against her. This charge was rejected.

Again, in the State of New York, respondent brought action against the state bar association, alleging that it had conspired with 140 listed persons and entities " 'to deny [respondent] the equal protection of the Penal Law * * * the common law, and the federal law * * * and the provisions of the United States Constitution and the New York State Constitution.' " *Muka v. New York State Bar Association*, 120 Misc.2d 897, 898, 466 N.Y.S.2d 891, 892 (1983). Among the entities listed as defendants were Cornell Law School, members of the Appellate Division of the Supreme Court, the New York State Court of Appeals, the New York State Commission on Judicial Conduct, and six Supreme Court justices in the Sixth Judicial District. The Supreme Court justice who decided the case noted that he had also been made a defendant in prior law suits brought by respondent and was named a conspirator in the action before the court but was hearing the case under the rule of necessity. He stated in the course of his opinion that "[i]t has been Mrs. Muka's habit to sue, attack as incompetent, or call for the removal of any judge who does not render a decision to her liking." 120 Misc.2d at 899, 446 N.Y.S.2d at 892. The justice of the Supreme Court of New York further noted that on December 20, 1977, respondent had commenced an action in the United States District Court for the Northern District of New York naming more than 100 defendants, including the New York State Bar Association, which allegedly conspired to deprive her of her civil rights. The action was dismissed on the merits by United States District Court Judge Howard G. Munson in a memorandum decision and order dated October 30, 1978, in which he ruled: "The complaint in this case is 'patently without merit' and 'wholly insubstantial and frivolous.' " *Id.*

Ultimately, the justice of the Supreme Court of New York referred to two other actions that had been brought against multiple defendants in 1978 and 1981. He concluded that respondent, who was then a graduate of a law school but not an attorney-at-law, had on August 16, 1978, brought suit against United States District Judge James T. Foley and named as other defendants Governor Hugh Carey of the State of New York; the State Attorney General; the United States Attorney General, Griffin Bell; both Houses of the New York State Legislature and each and every member thereof; the American Bar Association; the chief judge of the New York State Court of Appeals; the Dean of Cornell Law School; and a host of judges. As a result of this and other baseless and harassing litigation, the justice of the Supreme Court of New York enjoined respondent from commencing any civil action against the New York State Bar Association unless she was represented by an attorney duly licensed to practice law in the State of New York.

We mention the foregoing incidents only to indicate that the respondent's conduct in respect to the violation of disciplinary rules in this state and her extravagant and unfounded accusations against members of

the bar, the judiciary, and the medical profession in Rhode Island are not unique aberrations but represent a course of conduct in which she has been engaged for more than a decade.[2] This course of conduct, when considered in the context of the events in the present case, discloses beyond any doubt that the respondent is not qualified to practice law in this state and that it would be a danger to the public to allow her to represent litigants in the role of a practicing attorney. Not only is her procedural knowledge patently inadequate but she has manifested in this state, and also in the State of New York, an utter disregard for the requirements of law and the rights of any person who has the temerity to disagree with her or refuses to grant whatever request or demand the respondent may make upon him or her. Taking into account these proven attributes and characteristics, we feel it is incumbent upon this court to take appropriate measures to protect the people of the State of Rhode Island against the respondent's harassing litigation and malicious prosecution. It is our opinion that only an order of disbarment will provide such protection.

Accordingly, it is hereby ordered and directed that the respondent, Betty O. Muka, is hereby disbarred from the practice of law before the courts of this state. She is also ordered to comply with the provisions of Supreme Court Rule 42–15(a) and (b) and to furnish the clerk of this court on or before December 16, 1985, the names and addresses of any and all clients presently represented by her.

BEVILACQUA, C.J., did not participate.

APPENDIX A

ORDER

This matter is before us pursuant to two disciplinary petitions brought by Frank A. Carter, Jr., Chief Disciplinary Counsel (Carter). These petitions are based upon documents filed by Betty O. Muka in support

of a motion for new trial in respect to a medical malpractice case heard in the Superior Court entitled *Raymond Sousa v. Rosalind Chaset, in her capacity as the Executrix of the Estate of the late Nathan D. Chaset, M.D.*, C.A. No. 78–1969. In the documents filed in support of this motion for new trial, the respondent, Betty O. Muka, accused the trial justice, Thomas H. Needham, Justice Joseph F. Rodgers, Jr., and Attorneys David W. Carroll, Joseph A. Kelly, and John F. Dolan of conspiring to suborn perjury and to obstruct justice in order to deprive her client of a fair trial. She further accused Justice Needham of being a member of organized crime and of accepting a "pay-off" of $125,000 in order to terminate the malpractice case favorably to the defendant. She also accused in these documents Dr. John B. Lawlor of deliberately giving perjured testimony.

Because the respondent had filed complaints against virtually all members of the disciplinary board which would ordinarily have been the original hearing tribunal in this matter, the members of that board recused themselves from participating in an evidentiary hearing of the subject petitions. Therefore, this court undertook the task of acting as a fact-finding body as well as the duty of ultimate determination in respect to the imposition of disciplinary sanctions. This function has been performed by this court under the rule of necessity.

This court began hearing evidence in this matter on November 15, 1984, and continued hearings on November 30, December 10, and December 17, 1984. The hearings continued January 18, January 28, February 18, February 25, April 15 and April 16, 1985. In the course of the evidentiary hearings, not one shred of evidence has been produced to support any of these extravagant accusations on the part of Betty O. Muka. Consequently, the court is constrained to find as a fact that her accusa-

---

**2.** For an additional example of respondent's unprofessional conduct and blatantly false accusa-

tions, *see D'Arezzo v. Estate of Catherine Christy*, 499 A.2d 744 (R.I.1985).

tions could not have been based on any information sufficient to form a reasonable or sincere belief that such accusations were true. We find, therefore, that these accusations were made either with actual knowledge of their falsity or with reckless disregard of whether they were false or not. She has deliberately and grievously maligned members of the Superior Court and members of the bar of hitherto outstanding and unblemished reputation.

Her own tape-recorded evidence of a conversation with Dr. Lawlor, an outstanding member of the medical profession, completely belies her characterization of his testimony in court as perjured. She recorded a conversation with Dr. Lawlor and another conversation with Mr. William E. Egan, an adjuster for Joint Underwriting Association of Rhode Island, without indicating to either of them that the telephone conversations were being recorded. However, both conversations were admitted into evidence on her motion without objection. These recordings completely belie her accusations concerning misconduct on the part of Dr. Lawlor or Mr. Egan.

During the hearings before this court, Mrs. Muka consistently manifested a lack of any appreciation for her obligations as a member of the bar to support the truth; she consistently mischaracterized testimony and flagrantly reasserted her unsupported accusations against members of the judiciary and the bar. She displayed not even the most rudimentary knowledge of basic substantive and procedural law relating to the malpractice case in issue or relating to the disciplinary procedure before this court.

As a consequence, we are of the opinion that Mrs. Muka has violated the disciplinary rules set forth in the petitions before this court and that she is not qualified to practice law in this state, and that it would be a disservice to the public to allow her to continue to practice law as a member of the Rhode Island Bar.

For the reasons stated, Mrs. Betty O. Muka is hereby suspended from the prac-

tice of law, and a complete opinion will follow setting forth in greater detail the reasons for this action and any further disciplinary action to be taken in our final decision.

The respondent is directed to furnish to the clerk of this court within ten days of the date of this order the names and addresses of all clients presently represented by her in order that arrangements may be made to protect the interests of respondent's clients.

Chief Justice Bevilacqua did not participate.

Entered as an Order of this Court this 19th day of April, 1985.

APPENDIX B

"DR 7–102. Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

\* \* \* \* \* \*

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false."

"DR 7–106. Trial Conduct.

\* \* \* \* \* \*

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

\* \* \* \* \* \*

(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or inno-

cence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

\* \* \* \* \* \*

(6) Engage in undignified or discourteous conduct which is degrading to a tribunal."

"DR 8–102. Statements Concerning Judges and Other Adjudicatory Officers.

\* \* \* \* \* \*

(B) A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."

