OPINION OF THE COURT
Harold Tompkins, J.
This action raises the issue of the circumstances under *406 which the court may sua sponte impose sanctions under the Uniform Rules for Trial Courts (22 NYCRR 130.1 [d] [now 130-1.1 (d)]).
The issue arises from the lawsuit of the plaintiff, Anthony Martin-Trigona, against Capital Cities for requiring the posting of a bond as a prerequisite to issuing two new shares of stock.
BACKGROUND
The underlying claim arose when Anthony Martin-Trigona lost two shares of American Broadcasting Company (ABC) stock on or about June 17, 1988.[1] He requested information as to the procedure to obtain reimbursement from J. P. Morgan & Co., Inc., the exchange agent for ABC stock. Morgan Shareholder Services Trust Co., a subsidiary of J. P. Morgan Co., Inc., informed Anthony Martin-Trigona on July 7, 1988 that he had to provide evidence of loss in the form of an affidavit and a surety bond to indemnify ABC and Morgan Shareholder Services Trust Co. against any future claims that might be made against the lost shares by a party claiming to be a valid holder of the shares. On July 14, 1988 Anthony Martin-Trigona sent a letter entitled "Demand For Payment (Prior to Suit)”. He claimed there was no right to require a bond. The affidavit of loss was enclosed. On July 27, 1988 Capital Cities/ ABC, by its secretary, Philip Farnsworth, advised Anthony Martin-Trigona of the requirement and basis for surety bond to protect the issuer and the exchange agent from potential future claims. The next day Anthony Martin-Trigona reiterated his intention to sue since he claimed there was no requirement that a bond be posted. He asserted that Capital Cities was corruptly extorting money from shareholders contrary to New York law as a prerequisite to replacing lost shares.
The lawsuit commenced by Anthony Martin-Trigona seeks $1,000,000 in compensatory damages, $1,000,000 in punitive damages, specific performance, removal of all corporate officers and an award of 1,000 shares of Capital Cities’ stock. The action is purportedly brought as a class action on behalf of all similarly situated shareholders.
On November 14, 1988 defendants Capital Cities, J. P. *407 Morgan & Co., Inc. and Philip Farnsworth deposited the sum of $243.06 with the clerk of the court pursuant to CPLR 3219 as a tender of an amount deemed sufficient to satisfy the claim. Additionally, Capital Cities/ABC offered to waive the bond requirement for itself.
LOST STOCK CERTIFICATES
Defendants all seek summary judgment dismissing the complaint. They note that Business Corporation Law § 508 (e) explicitly provides that a corporation may require an owner of a lost or destroyed share to give a bond sufficient to indemnify it against any claim that may be on account of the alleged loss, or destruction of the certificate, or the issuance of any new replacement certificate. They further note that pursuant to this legislative authority, on November 14, 1977, the ABC board of directors adopted a resolution that required an indemnity for the loss, theft, or destruction of shares from the owner prior to issuance of replacement certificates. In opposition, Anthony Martin-Trigona acknowledges that New York law does permit the requirement of a bond. He states there are disputed issues of fact regarding unconscionability of the requirement of the amount of the bond. Rather than identify any material disputed facts, he instead claims to be standing up for the small shareholder who is harassed and swindled by a large corporation. These claims of conspiracy are in line with Anthony Martin-Trigona’s history of wholly baseless claims.
Business Corporation Law § 508 (e) clearly permits the defendants to require posting of an indemnity. An indemnity protects them against a future claim from a future holder of lost stock. It ensures they will not have to redeem the stock more than once. It thereby reduces inaccurate claims of loss. The court takes note that despite Anthony Martin-Trigona’s purported concern for the small shareholder, he seeks an award of 1,000 shares of stock for himself. Further, there is no basis for an action to remove an officer since a prerequisite is the ownership of 10% of the outstanding shares (Business Corporation Law § 716 [c]).
Since there is no basis to . any of the causes of action,[2] defendants’ motion for summary judgment dismissing the complaint is granted.
*408 SANCTIONS
On the submission date, the court heard oral argument on the record concerning the motion from defendants’ counsel and plaintiff Anthony Martin-Trigona. The court had previously reviewed the moving papers. On the return date the court reviewed the four-page affidavit of Anthony Martin-Trigona. It advised him of its intention to impose sua sponte sanction based upon the patently frivolous nature of this action under the Uniform Rules for Trial Courts (22 NYCRR part 130). When the court analogized part 130 to rule 11 of the Federal Rules of Civil Procedure, Anthony Martin-Trigona evinced an understanding of the nature of the potential sanction and the basis for the sanction being a claim wholly lacking in merit. Anthony Martin-Trigona is quite familiar with sanctions authority since he has a long history of bringing baseless claims in a variety of forums.
The United States Court of Appeals for the Second Circuit enjoined Anthony Martin-Trigona from commencing, or continuing any further proceedings in the Federal courts without prior court approval (In re Martin-Trigona, 737 F2d 1254 [2d Cir 1984], on remand 592 F Supp 1566 [Conn 1984], affd 763 F2d 140 [2d Cir 1985], cert denied 474 US 1061 [1986]). The Federal appellate court held that Anthony Martin-Trigona exhibited a pattern of literally hundreds of lawsuit motions and other proceedings, virtually all of which lacked any legitimate basis. Anthony Martin-Trigona is not the typical party pro se. He is a law school graduate who was denied admission to the Illinois Bar because "he lacks the qualities of responsibility, candor, fairness, self-restraint, objectivity and respect for the judicial system which are necessary adjuncts to the orderly administration of justice” (In re Martin-Trigona, 55 Ill 2d 301, 312, 302 NE2d 68, 74 [1973], cert denied 417 US 909 [1974]). His numerous actions in the United States Court for the District of Connecticut asserted that there was a "Jewish conspiracy of bankruptcy judges and lawyers.” In addition to the claims of a "Jewish conspiracy”, Anthony Martin-Trigona has instituted lawsuits against law firms representing opposing parties, State Judges who ruled against him, all sitting Federal Judges in the District of Connecticut, public officials, public agencies and news organizations based upon a variety of conspiracy theories. In short, Anthony Martin-Trigona will file suit against anyone who does not acquiesce in whatever claim he asserts, regardless of the objective facts.
*409 After reviewing Anthony Martin-Trigona’s history, the Federal appeals court entered an injunction restraining his prosecution of claims in the Federal courts. It held that the Federal courts need not be inundated by a barrage of meritless actions that imposed burdens on the courts and significant, unnecessary expenses on adversaries.
After a two-year period in which Anthony Martin-Trigona filed more than 100 notices of appeal, the Federal appeals court made the injunction permanent and dismissed all of his outstanding appeals (In re Martin-Trigona, 795 F2d 9 [2d Cir 1986]).
Since that injunction applied only to the Federal courts, Anthony Martin-Trigona has apparently moved the venue for his harassment to the courts of this State. Since the institution of the I.A.S. on January 3, 1986, there have been 16 cases in the Supreme Court, New York County, brought by Anthony Martin-Trigona. All but one of these actions have been dismissed. Anthony Martin-Trigona’s history demonstrates a pattern of commencing claims without any legitimate basis as a means of harassing his adversaries. This court has the same interest in preventing the harassment of innocent victims of Anthony Martin-Trigona through abuse of the court system that the Federal courts have. It has the same interest in preventing the waste of judicial resources by a party who knows that his lawsuit has no legitimate basis in law or fact. The resources taken up by Anthony Martin-Trigona are stolen from the general public and the other litigants who have genuine claims.[3]
Accordingly, Anthony Martin-Trigona is enjoined from commencing, or continuing, any further action, or proceeding, or any further motions unless he is represented by an attorney-at-law admitted to practice in the State of New York without prior approval of the Administrative Judge of the court[4] in which he seeks to bring a further motion or future action with *410 the sole exception of appealing the order based upon this decision (Muka v New York State Bar Assn., 120 Misc 2d 897 [Sup Ct, Tompkins County 1983]; Muka v Hancock, Estabrook, Ryan, Shove & Hust, 120 Misc 2d 146 [Sup Ct, Onondaga County 1983]). .
22 NYCRR part 130 provides the courts of the State of New York with the authority to impose sanctions on a party who engages in frivolous conduct. A frivolous action or defense is one in which there is no basis in law or fact or any reasonable basis for extension, modification, or reversal of existing law or is undertaken for the primary purpose of harassment or delay (22 NYCRR 130.1 [c] [now 130-1.1 (c)]).
The court takes note of Anthony Martin-Trigona’s prior history and the baseless nature of this claim in imposing sanctions. Since Anthony Martin-Trigona is a law school graduate and has extensive experience in prosecuting claims, he should have known that there was no basis to sue Capital Cities, J. P. Morgan & Co., Inc., or Philip Farnsworth. His background indicates he has the ability to ascertain the applicable law. Even if he were not aware initially that he lacked any viable claim, after receiving the defendants’ motion for summary judgment outlining the authority of Business Corporation Law § 508 (e) and the authorizing resolution of the ABC board of directors, Anthony Martin-Trigona was put on notice that defendants’ action in requiring a bond was wholly within their rights. The continuation of proceedings by Anthony Martin-Trigona thereafter, even after being advised by this court of the baseless nature of this action, indicates knowing, willful and wrongful conduct that warrants a severe sanction.
This court has the authority to impose sanctions by the court sua sponte (see, 22 NYCRR 130.1 [d]; Hoeflich v Chemical Bank, 149 AD2d 341).
Under the circumstances of this action, the court feels that imposition of sanctions is warranted. Sanctions are assessed in the amount of $5,000[5] to be deposited with the clerk of the *411 court for transmittal to the New York State Department of Taxation and Finance pursuant to 22 NYCRR 130.3 (now 130-1.3).[6]
Settle order granting the motion dismissing with applicable costs and disbursements of the action together with a provision imposing a sanction against Anthony Martin-Trigona in the sum of $5,000 and, also, including the provision enjoining further current proceedings or future actions on a pro se basis.[7]

. ABC was merged into Capital Cities/ABC on January 3, 1986. The value of Anthony Martin-Trigona’s shares was $121.53 per share for a total value of $243.06.

. It is well settled that there is no basis for a tort claim of emotional distress arising out of an action sounding in contract.

. The negative impact of frivolous actions on the court system, as well as adversaries, was prominently mentioned by a recent report of the New York State Bar Association, Commercial and Federal Litigation Section. It recommended against any suspension of the new rules. This court agrees with its conclusion that suspending the rules against frivolous conduct would send a message that such inappropriate activity could continue.
The facts of this case show the excess burden on parties and the courts that rules authorizing sanctions can prevent.

. The Administrative Judge may delegate the function of prior approval to his or her designee.

. Defendants request that the court issue an order permitting payment of $243.06 paid into court to the plaintiff. Since this amount is the value of the plaintiffs shares, payment of the $243.06 deposited is permitted upon proof that plaintiff Anthony Martin-Trigona has paid the sanctions assessed herein.

. Although Anthony Martin-Trigona was aware that he lacked a legitimate basis for his claim, the full amount of sanctions are not warranted. In Matter of Winters v Gould (143 Misc 2d 44 [Sup Ct, NY County 1989]), the petitioner had brought a prior action on the identical issue. He therefore had a judicial determination against the precise claims that were raised in his action. While Anthony Martin-Trigona’s actions are egregious, since he did not have an explicit judicial ruling against him on the claims in this lawsuit, the sanction imposed upon him is less than this court imposed on Mr. Winters.

. Any attempt by Anthony Martin-Trigona to circumvent this restraint by using another person as a straw to file papers would be improper. This court would consider such activity to be a deliberate violation of this order. Anthony Martin-Trigona will not be permitted by this court to use another person to prosecute baseless and harassing claims.