OPINION OF THE COURT
Peter R. Sprague, J.
issues
This action was brought by plaintiffs Steiner, as purchasers *11 of certain realty, against defendants Bonhamer, as the sellers of the realty, and against the two defendant realtors, for alleged fraud and misrepresentation of the fitness, quality, and habitability of the realty. After the direct testimony of the plaintiff Jean E. Steiner the court found the allegations to be without merit and dismissed the complaint.
Pursuant to section 130-1.1 of the Uniform Rules for Trial Courts (22 NYCRR), which section became effective January 1, 1989, defendants Bonhamer have moved for an order imposing sanctions against the plaintiffs and the plaintiffs’ attorney. Defendants Bonhamer, in requesting sanctions, seek reimbursement for their legal fees and expenses, including the expense of traveling from Florida for trial.
Pursuant to CPLR 2215, the plaintiffs have cross-moved for reargument of the motion which culminated in dismissal of the action, and for leave to reopen the case "to complete the plaintiffs’ proof’.
ANALYSIS
I. Issue of Sanctions
Section 130-1.1 of the Uniform Rules for Trial Courts has been characterized as "the New York State courts’ analog to Fed Rules Civ Pro, rule 11” (Perett v American Express Travel Related Servs. Co., 145 Misc 2d 231, 233 [Civ Ct, Kings County 1989]).
Subdivision (a) of section 130-1.1 provides, in pertinent part, as follows: "The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees, resulting from frivolous conduct”.
According to subdivision (c) (i) and (ii) of section 130-1.1, conduct is "frivolous” if:
"(i) it is completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or
"(ii) it is undertaken primarily * * * to harass or maliciously injure another.”
Subdivision (c) of section 130-1.1 requires the court, "[i]n determining whether the conduct undertaken was frivolous * * * [to] consider, among other issues, (1) the circumstances under which the conduct took place, including the time avail *12 able for investigating the legal or factual basis of the conduct; and (2) whether or not the conduct was continued when its lack of legal or factual basis was apparent or should have been apparent to counsel.”
Subdivision (b) of section 130-1.1 authorizes the court to award costs or impose financial sanctions against either an attorney or a party to the litigation or against both.
Because of the fairly recent inception of the "financial sanction” rules, there exists a paucity of reported case law interpreting and applying the rules. Before turning to the instant case, the court will consider available precedents on the issue of financial sanctions.
As far as the liability of counsel is concerned, the court first considers the principle recently articulated by Justice Doyle: "New York requires attorneys in all actions to investigate the legal and factual basis for an action before commencing litigation” (Matter of Love Canal Actions, 145 Misc 2d 1076 [Sup Ct, Niagara County 1989]).
A court has a duty to "prevent * * * the harassment of innocent victims” and to "prevent * * * the waste of judicial resources by a party who knows that his lawsuit has no legitimate basis in law or fact” (Martin-Trigona v Capital Cities/ABC, Inc., 145 Misc 2d 405, 409 [Sup Ct, NY County 1989]).
Financial sanctions are intended to deter "errant and frivolous approach[es]” which "impose on the judicial system an unnecessary burden” (Hoeflich v Chemical Bank, 149 AD2d 341, 342 [1st Dept 1989]).
The court has reviewed the case of Matter of Winters v Gould (143 Misc 2d 44, 47 [Sup Ct, NY County 1989]) in which Justice Tompkins characterized the conduct of the pro se petitioner therein as "a paradigm example of the need for sanctions”. Justice Tompkins imposed the "maximum permissible sanction” of $10,000, emphasizing that the petitioner had commenced the special proceeding "when he knew there was no legitimate basis”, and had engaged in a "pattern of frivolous and repetitious proceedings” (at 47, 48).
Before reaching his conclusion; Justice Tompkins wrote: "In considering the imposition of sanctions the court must weigh the potential effect on inhibiting good-faith arguments to modify existing law. This traditional method of common-law jurisprudence is the means whereby courts can reexamine *13 existing precedent in the light of changing circumstances.” (Matter of Winters v Gould, supra, at 47.)
Significantly, in the Winters case, Justice Tompkins found that the culpable party was “a chronic abuser of the judicial system”. (Matter of Winters v Gould, supra, at 47.)
The court recognizes that the "frivolous sanction” rules, like any statutory or regulational penalty provision, must be strictly and narrowly construed (see, e.g., McKinney’s Cons Law of NY, Book 1, Statutes § 271; Osborne v International Ry. Co., 226 NY 421). A corollary of this principle is that a statute or rule which is punitive in nature "may not be extended to doubtful situations” and that "every reasonable doubt * * * should be resolved in favor of [the accused party]” (McKinney’s Cons Law of NY, Book 1, Statutes § 271, at 438; City of Rochester v Rochester Gas & Elec. Corp., 233 NY 39; People v Komosa, 47 Misc 2d 634 [Kingston City Ct 1965]).
The court also notes that the provisions in section 130-1.1 are in derogation of the traditional, well-settled rule in New York that "a civil litigant may not recover attorney’s fees in the absence of contractual or statutory authority” (Obas v Kiley, 149 AD2d 422, 424 [2d Dept 1989]).
Up to this point, the court has been considering court rules and prior case law. It is also pertinent to consider ethical prohibitions. In this regard, the court notes the provisions of DR 7-102 (A) (1) and (2) in the Code of Professional Responsibility:
"In his representation of a client, a lawyer shall not * * *
"(1) File a suit, assert a position * * * or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
"Knowingly advance a claim * * * that is unwarranted under existing law, except that he may advance such claim * * * if it can be supported by good faith argument for an extension, modification, or reversal of existing law”.
It is incumbent upon the court to balance two policies: (1) extending to plaintiffs who perceive themselves as aggrieved their "day in court” (see, e.g., Andre v Pomeroy, 35 NY2d 361, 364) and, (2) shielding "innocent” defendants from the expense and anxiety of baseless litigation.
From the express language of section 130-1.1 itself, and from the decisional law construing the language, the court *14 distills the following as pertinent considerations in determining whether sanctions should be imposed:
1. Has the "accused” litigant or attorney manifested an intention to harass, annoy or inconvenience his adversaries?
2. Has the accused litigant or attorney manifested a "pattern” of commencing baseless claims?
3. What communication and negotiation, if any, between the parties or their counsel preceded the commencement of the action?
4. What statutory or decisional authority, if any, has the accused litigant or attorney cited in support of his claims?
5. Are the facts of the case clear and not in dispute or is there a complex fact pattern clouded by several -versions of what happened?
6. In balancing all of the pertinent factors and exercising the court’s discretion, what remedy, if any, do fairness and equity dictate?
In the instant case the court finds the attorney fee for Bonhamers, the parties seeking sanctions, well supported by affidavit proof for attorney time expended and fair and reasonable in amount. Reasonable in view of the issues in the case, reasonable in view of the time and effort that could be inferred from the nature of the case, reasonable from the perspective of the Judge assigned to the case. The total amount of attorney fee requested of $2,388 plus some reasonable amount for travel expense is a good measure of the appropriate amount of sanctions in this case if sanctions are warranted.
In applying the criteria for sanctions in this case the court:
A. Finds no intent to harass, annoy or inconvenience adversary parties or adversary attorneys.
B. Finds no pattern of several or dozens of baseless claims being presented to one or more courts.
C. Is unaware of any contacts or communications before commencement of the litigation, but lack of such while a factor to consider, in and of itself is not sufficient to warrant imposition of sanctions.
D. Determines that the applicable law is relatively clear and the facts are not much in doubt; the operation of those facts on the applicable law was the essence of this litigation.
E. Finds that in fairness and equity this was a single-shot litigation with no pattern of similar litigations or other litiga *15 tians by the same plaintiffs in which counsel were unable to reach a common ground for their clients to settle the matter short of trial. In short this case is the stuff of which lawsuits are made. The success of one party against another does not demonstrate, ipso facto, entitlement to sanctions.
Accordingly after due deliberation the application for sanctions is hereby denied, without costs to either party.
The court next considers the cross application of the plaintiffs to reopen the proof.
II. Issue of Reopening Case
"The grant of leave to reargue is a matter committed to the discretion of the court” (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 2221.04, citing Delcrete Corp. v Kling, 67 AD2d 1099 [4th Dept 1979]). In considering whether such leave should be granted the court must keep in mind the policy of litigational repose: " ’there must be an end to lawsuits’ ” (Siegel, NY Prac § 254, at 314, citing Matter of Huie, 20 NY2d 568).
In the instant case the court concludes that the plaintiffs have fairly and adequately "had their day in court”. If they feel substantially aggrieved by the decision of the court they have the option to pursue appellate remedies. The court perceives no reason, however, to vacate the dismissal and reopen the case.
The cross motion of the plaintiffs is denied, without costs.