OPINION OF THE COURT
Bernice D. Siegal, J.
The above-captioned cases, all matters commenced by a provider of health services seeking reimbursement through New York’s No-Fault Insurance Law and upon which the plaintiffs sought to move this court for various relief (e.g., summary judgment), have been consolidated for the purpose of determining what, if any, sanctions pursuant to 22 NYCRR 130-1.1 should be imposed against plaintiffs’ counsel. The first six cases were consolidated and noticed for a hearing scheduled for April 15, 2005. The order, setting the matters down for a hearing, noted that the dates of the affirmations of service (affirmed by the plaintiffs’ counsel) were considerably earlier than the date indicated for the execution of the affidavit annexed thereto, which plaintiffs’ counsel witnessed as a notary public. Prior to the hearing, additional matters came before the court, which were not withdrawn by the plaintiffs, but, as the papers contained evidence of similar questionable conduct and more creative filings, the court, with the agreement of counsel for the plaintiffs, consolidated all the matters for a hearing on the record, affording plaintiffs’ counsel an opportunity to explain his conduct and defendants’ counsel an opportunity to advise the court. As is clear from the testimony adduced at the hearing and more fully set forth below, the conduct of plaintiffs’ counsel, to wit, filing facially false affirmations of service, filing papers with the court that are wholly different from the documents served upon his adversary, and altering (or knowingly submitting altered) documents apparently for the purpose of attempting to circumvent prior judicial decisions must be held up for opprobrium and not tolerated by the courts.
Thus, on the court’s own motion and after a hearing where said attorney had a full opportunity to be heard and to submit evidence in support of his position, sanctions in the amount of $34,000 are imposed against Alden Banniettis, Esq. as fully set forth below.
Finding of Facts
The record revealed, as it became apparent to the court, several different types of knowing violations of court rules, the *174 Civil Practice Law and Rules and ethical considerations and rules of professional conduct, all of which deceived the court and plaintiffs’ adversaries. In each of the initial six matters (cases 1-6), plaintiff served upon defendants a two-page affidavit in support of its motion, executed prior to the purported date of service. Plaintiffs’ attorney notarized the affidavit of his clients’ representative and executed an affirmation of service. Invariably, those motion papers (from affirmation through the affidavit) were numbered in sequence until a separate jurat page. Significantly, the court, prior to the return date of the within motions, had previously rejected similarly questionable submissions by plaintiffs represented by Alden Banniettis, Esq.
However, in these instances, plaintiffs’ attorney went a step further, perhaps in response to the court’s prior rulings or an earlier hearing before the Honorable Edgar Walker, whereupon it came to the court’s attention that plaintiffs’ attorney removed the earlier executed affidavit (which was served upon his adversary) from the original motion papers to be filed with the court and replaced same with a one-page affidavit, substantially different in its language and dated well after the affirmation of service.[1] No proof of service of these replacement affidavits was filed with the court.
For example, the plaintiff served a two-page affidavit where the affidavit was denominated as page 10 with a separate jurat page dated March 22, 2004, but the papers filed with the court contained a one-page affidavit, no page numeration, dated May 12, 2004 with substantially different contents.[2] Incredibly the plaintiff, in yet another matter, served motion papers including a two-page affidavit of Bryan Siegel notarized the same day as the purported service, but the affidavit filed with the court was from an entirely different individual and provider executed after the purported service upon defendant.[3] Meanwhile, in others, the affidavits served upon the adversary were undated and *175 on two pages, and yet the papers filed with the court contained a single page, dated affidavit.[4]
Significantly, none of the defendants were aware of the bait and switch until either the conference held in Part 40/41 on the return date of the motion or upon the instant hearing. CPLR 2214 (c) mandates that “[o]nly papers served in accordance with [CPLR 2214] shall be read in support of. . . the motion, unless the court for good cause shall otherwise direct” (emphasis added). Although given an opportunity to assist the court in understanding what appears to be a blatant attempt to deceive the court and plaintiffs’ adversaries, Mr. Banniettis merely states: “I stand by my word” or “My testimony is my proof’ and that those documents were served upon the defendants; and given an opportunity to provide documentary proof as to the service of the subsequent affidavits, apparently submitted to the court but not served, no documentary proof was forthcoming. Plaintiffs’ counsel continued to provide bald, conclusory statements as to his actions with respect to motion practice.
Plaintiffs’ attorney also knowingly submitted altered documents to the court, such documents being the very bases of the lawsuits commenced herein. A proper proof of claim is mandated as a building block of a provider’s prima facie case seeking reimbursement under New York State’s No-Fault Insurance Law. (See Mary Immaculate Hosp. v Allstate Ins. Co., 5 AD3d 742 [2d Dept 2004]; A.B. Med. Servs. PLLC v Lumbermens Mut. Cas. Co., 4 Misc 3d 86 [App Term, 2d & 11th Jud Dists 2004].) Consequently, the courts require a copy of the proof of claims as documentary proof. Apparently to avoid denial of its summary judgment motion, the claim forms were altered after service of motion papers upon its adversary (the served papers were not so changed), and, it follows logically, after the initial submission of the claim to the insurance carrier. Each claim form (NF-3) was altered by either adding a “signature” or the corporate name with the word “by” next to the provider’s signature, apparently to signal legal authority.[5]
*176 In some instances, plaintiffs’ attorney combined both, by serving upon defendant papers including a two-page affidavit denominated as page 14 with a separate undated jurat page and a duplicate of the claims form actually filed with the defendant, but filing with the court substantially different papers including a one-page affidavit, dated and signed, and an altered claims form.[6]
Plaintiffs’ attorney admitted to knowing that the documents were altered and stated they were altered (by his clients) because the court, in essence, had previously rejected motions containing unsigned claims forms or claims forms with other defects.
False certification is grounds for sanctions.
A Question of Sanctions
Prior to 1998, “frivolous conduct” remained outside the scope of judicial authority in the state courts, as differentiated from Federal Rules of Civil Procedure rule 11, which provided not only a working definition of “frivolous conduct” but punishment for the pursuit of baseless and meritless claims. The Chief Administrator of the Courts promulgated 22 NYCRR subpart 130-1 to define such conduct and provide a basis for punishing the wrongdoer. Section 130-1.1 (c) (3) provides that frivolous conduct is conduct that, among other deficiencies, “asserts material factual statements that are false.”
“In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.” (22 NYCRR 130-1.1 [c].)
Significantly, the Chief Administrator specified that “[ejvery pleading, written motion, and other paper, served on another party or filed or submitted to the court shall be signed by an attorney” (22 NYCRR 130-1.la [a]), and that signature “certifies” that the “presentation of the paper or the contentions therein are not frivolous” (130-1.la [b]).
*177 Accordingly, a false certification alone is sufficient grounds for the imposition of sanctions. (See DeRosa v Chase Manhattan Mtge. Corp., 15 AD3d 249 [1st Dept 2005].) In the instant matters we find both false “certifications” and false affirmations of service, both executed by Alden Banniettis. Moreover, the documents were misleading and improper material was submitted knowingly by this attorney. The court and plaintiffs’ adversaries were both initially deceived and, through such deception, Mr. Banniettis violated the court rules as well as the CPLR and sought to affect the decision making process of the court. Although the court has not addressed the merits of many of the underlying motions, it simply cannot get beyond the false and perhaps perjurious filings. Plaintiffs’ counsel has provided no good faith reason for falsifying documents or for submitting documents to the court never served upon his adversaries. The only conclusion the court can conjure is that plaintiffs’ attorney purposely sought to deceive his adversaries and improperly influence the court’s decision.
As such, the court is constrained, by this attorney’s actions and failure to justify or explain in any way his conduct, to impose sanctions. However, “what remedy [the court imposes] is dictated by considerations of fairness and equity (cf., Steiner v Bonhamer, 146 Misc 2d 10)” (Levy v Carol Mgt. Corp., 260 AD2d 27, 34 [1st Dept 1999]). Moreover,
“[s] auctions are retributive, in that they punish past conduct. They also are goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the Bar at large. The goals include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics.” (Id. [citations omitted].)
The measure of sanctions should be proportionate to the amount sought in the lawsuit, the culpability of the party’s conduct and prejudice to the adversary (see Vicom, Inc. v Silverwood Dev., 188 AD2d 1057 [4th Dept 1992]).
The course of conduct displayed by plaintiffs’ counsel is the equivalent of street corner three card Monty with the court and adversaries forced to guess which set of papers contains the proper submission and when Mr. Banniettis is “busted” at one corner, he reassembles on to another corner with yet another type of impropriety, The court is simply not willing to play the game. In the instant matter, the measure of sanctions must *178 take into account the seriousness of the unrebutted improprieties, the proven intent to deceive both court and adversaries and the magnitude of the conduct.
Accordingly, the court imposes sanctions against Alden Banniettis in the amount of $4,000 for each of the six initial matters in which the court found false affirmations of service that included affidavits dated after the date of such affirmation and $1,000 for each other matter in which the court found sanction-able conduct payable to the Lawyers’ Fund for Client Protection for a total of $34,000 and directs that the clerk enter judgment against him pursuant to 22 NYCRR 130-1.2.

. See, PDG Psychological v State Farm Ins. Co. (Index No. 10072/03); Oleg Barshay v State Farm (Index No. 47044/02); Dilon Med. Supply v General Cas. (Index No. 133324/03); Oleg Barshay D.C. PC (Louis) (Index No. 047045/02); Dilon Med. Supply Co. v American Ind. Ins. Co. (Index No. 128714/ 03); PDG Psychological, P.C. (Sandino) (Index No. 139065/03).

. Delta Diagnostics v Progressive (Index No. 38710-04).

. Omni Chiropractic v New York Cent. Mut. (Index No. 139599/03).

. Contemporary Acupuncture v New York Cent. Mut. (Index No. 139595/ 03); PDG Psychological (Melissa) (Index No. 128621/03).

. PDG Psychological v Travelers Ins. (Index No. 100063/03 [claim forms altered by additional handwriting placing the words PDG Psychological, PC over the signature line and the word “by” next to the “signature” of E Gold-stein]); PDG Psychological v General Assur. Ins. Co. (Index No. 032304/04); also see IVB Med. Supply Inc. v State Farm (Index No. 38430/04 [name “Berlovich” inserted on signature line of claim form filed with the court but not on *176 the claim form submitted to the carrier or served upon the carrier’s attorney]); GPM Chiropractic v General Assur. (Index No. 128588/03), and GPM Chiropractic (Index No. 128573/03 [both contain claims forms altered by inserting “GPM Chiropractic, EC.” and “by Parvel Mostun”]).

. PDG Psychological v Progressive (Index No. 128621/03).