OPINION OF THE COURT
Daniel F. Luciano, J.
This proceeding in which the petitioner, Nola Rocco, sought the appointment of a guardian for the respondent, Elizabeth Rocco, was scheduled for the commencement of a jury trial on May 25, 1994. On that date the petitioner stated her intention to seek withdrawal of the petition and the respondent thereupon made an oral application to dismiss the petition which was granted by the court on the record.
The court is now in receipt of a proposed "order and judgment dismissing petition and setting fees” submitted by the respondent, Elizabeth Rocco. The court is also in receipt of a proposed order submitted by the petitioner, Nola Rocco.
The differences in the two orders reflect the parties’ dispute as to whether under the circumstances herein the petitioner, Nola Rocco, should be liable to pay for the respondent, Elizabeth Rocco’s, legal fees, and, further, whether the petitioner should be liable for sanctions pursuant to part 130, subpart 130-1 of the Rules of the Chief Administrator of the Courts (22 NYCRR).
The parties are in agreement that the petitioner, Nola Rocco, should be liable to pay the reasonable allowance due for the Court Evaluator, Anne F. Mead, Esq.
One of the contentions of the respondent, Elizabeth Rocco, who retained counsel of her own choice, is that section 81.10 (f) of the Mental Hygiene Law authorizes the court to direct the petitioner, Nola Rocco, to pay her attorney’s fees.
The court, however, does not agree.
Section 81.10 (f) of the Mental Hygiene Law provides, in part: "The court shall determine the reasonable compensation for the mental hygiene legal service or any attorney appointed pursuant to this section. The person alleged to be incapacitated shall be liable for such compensation unless the court is *762 satisfied that the person is indigent. If the petition is dismissed, the court may in its discretion direct that petitioner pay such compensation for the person alleged to be incapacitated.”
The plain language of this provision strongly suggests that the only fees for an attorney for the incapacitated person within its contemplation are fees "for the mental hygiene legal service or any attorney appointed pursuant to this section.” (Mental Hygiene Law § 81.10 [f].) Accordingly, the court is constrained to conclude that this section has no application when the alleged incapacitated person, as here, has privately retained her own attorney.
The court notes the suggestion of counsel for the respondent, Elizabeth Rocco, that to circumvent the language of the statute the court issue a nunc pro tune order appointing him as counsel for the respondent.
This, however, is a fiction in which the court will not participate.
The point raised by the respondent, Elizabeth Rocco, relative to the awarding of counsel fees is, however, worthy of some further discussion.
It is clearly the case that a person for whom a guardian is appointed, who is most often guilty of nothing but having attained an advanced age, or incurring some illness or injury, is burdened with expenses without such person’s consent or, sometimes, knowledge. These expenses may include: the reasonable allowance to the Court Evaluator (Mental Hygiene Law § 81.09 [f]); reasonable compensation for the mental hygiene legal service or an attorney appointed for the alleged incapacitated person (Mental Hygiene Law § 81.10 [f]); reasonable compensation for the attorney for the petitioner, including the Attorney-General and the attorney for a local Department of Social Services (Mental Hygiene Law § 81.16 [f]); the cost of the guardian’s bond; reasonable compensation of the guardian; and the expenses of the examination of the annual reports of the guardians (Mental Hygiene Law § 81.32 [f]).
The Legislature has recognized that the alleged incapacitated person may be entitled to some relief for the expenses of the proceeding when the petitioner has not proved his or her case. Section 81.09 (f) of the Mental Hygiene Law provides, in part: "When a judgment denies or dismisses a petition, the court may award a reasonable allowance to a court evaluator, including the mental hygiene legal service, payable by the *763 petitioner or by the person alleged to be incapacitated, or both in such proportions as the court may deem just.”
And, as noted above, Mental Hygiene Law § 81.10 (f) provides that if the petition is dismissed the petitioner may be required to pay the reasonable compensation for the mental hygiene legal service or any attorney appointed for the alleged incapacitated person.
In this court’s view, however, the equity of these remedies would be balanced to a far greater degree if Mental Hygiene Law article 81 included the authority for the court, when a petition is dismissed, to direct payment by the petitioner of the legal fees of the alleged incapacitated person whether counsel was appointed or privately retained.
The current scheme, in which counsel fees for a privately retained attorney may be recovered only in the presence of frivolous conduct by the petitioner (as discussed below), may well have a chilling effect upon the willingness of a person alleged to be incapacitated to retain an attorney when such person is already faced with the potential of incurring the many expenses listed above, and others not listed which may vary from case to case. In a statutory scheme which is so greatly focused on recognizing and protecting the rights of an alleged incapacitated person, the practical limitation on such person’s access to counsel presently in place is incongruous. The statute should encourage an alleged incapacitated person, irrespective of such person’s financial status, who may be inclined to resist a petition in a Mental Hygiene Law article 81 proceeding to assert all legal rights, and this ordinarily can be done only with the assistance of counsel.
This court respectfully urges the New York Legislature to examine these considerations and explore whether an appropriate amendment to article 81 of the Mental Hygiene Law may be in order.
The court now turns to the question of whether costs and sanctions should be imposed pursuant to part 130, subpart 130-1 of the Rules of the Chief Administrator, an issue which must be separately considered.
At the outset it may be noted that in cases in which the court finds the imposition of such costs and sanctions to be warranted the costs awarded may include "reasonable attorney’s fees”. (Rules of Chief Administrator of Cts [22 NYCRR] § 130-1.1 [a].)
The procedural requirements relative to this application are *764 set forth in section 130-1.1 (d) and section 130-1.2 of the Rules of the Chief Administrator of the Courts.
Pursuant to section 130-1.1 (d): "An award of costs or the imposition of sanctions may be made either upon motion in compliance with CPLR 2214 or 2215 or upon the court’s own initiative, after a reasonable opportunity to be heard. The form of the hearing shall depend upon the nature of the conduct and the circumstances of the case.”
Section 130-1.2 provides: "The court may make an award of costs or impose sanctions or both only upon a written decision setting forth the conduct on which the award or imposition is based, the reasons why the court found the conduct to be frivolous, and the reasons why the court found the amount awarded or imposed to be appropriate. An award of costs or the imposition of sanctions or both shall be entered as a judgment of the court. In no event shall the total amount of costs awarded and sanctions imposed exceed $10,000 in any action or proceeding.”
Thus, it is clear that sanctions cannot be summarily imposed.
If there is reason to conclude that the petitioner, Nola Rocco, and her attorney* engaged in frivolous conduct then it is appropriate for the court to notify the parties of its conclusion in that regard and provide to them the opportunity to be heard as required pursuant to section 130-1.1 of the Rules of the Chief Administrator of the Courts.
For purposes of part 130, subpart 130-1 of the Rules of the Chief Administrator, conduct is frivolous if:
"(1) it is completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or
"(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another.” (22 NYCRR 130-1.1 [c].)
Under the circumstances revealed to date there is reason to conclude that the commencement of the instant Mental Hygiene Law article 81 proceeding for the appointment of a guardian for Elizabeth Rocco might constitute frivolous conduct under either of these definitions.
*765 It should be recalled that in order to establish that an individual is an incapacitated person in need of a guardian pursuant to article 81 of the Mental Hygiene Law the petitioner must establish by clear and convincing evidence that the alleged incapacitated person is actually incapacitated. (Mental Hygiene Law §81.02 [a].) To find that a person is incapacitated it must be determined that:
"1. the person is unable to provide for personal needs and/ or property management; and
"2. the person cannot adequately understand and appreciate the nature and consequences of such inability.” (Mental Hygiene Law § 81.02 [b].)
It is further required before the court may appoint a guardian for an individual that it be established "that the appointment is necessary to provide for the personal needs of that person, including food, clothing, shelter, health care, or safety and/or to manage the property and financial affairs of that person”. (Mental Hygiene Law § 81.02 [a] [1].)
In view of these very high standards of proof, coupled with the fact that there exists extreme disharmony between the petitioner, Nola Rocco, and her sister, the respondent, Elizabeth Rocco, which was clearly evidenced in the proceeding before this court for the appointment of a guardian for their mother, Genevieve Rocco, there is at least a colorable basis for concluding that the instant proceeding may have been commenced with the knowledge that the facts needed to establish that Elizabeth Rocco was an incapacitated person in need of the appointment of a guardian did not exist or could not be established, and that the motivation for the initiation of the proceeding may have been to harass or, with malice, to injure Elizabeth Rocco.
Support for the conclusion that a legitimate basis for the commencement of this proceeding did not exist can be found in the report of the Court Evaluator, Anne F. Mead, Esq., dated May 11, 1994.
Ms. Mead’s report reflects that Elizabeth Rocco is not a person without problems as she has stated therein: "It is clear that the rocco family has psychological problems which unfortunately affect their mother, Genevieve rocco. Since Elizabeth lives with her mother and has a drinking problem, an inability to deal with the gradual deterioration of her mother, the constant presence of strangers in the household, and the inability or just plain refusal to get a real job, she reacts in a *766 manner that is inimical to her mother’s needs and her own needs. She appears to me to be unable to 'grow up’ and deal with what is probably a long standing dysfunctional family situation.”
Nevertheless, the report quite significantly continues:
"However, her problems, in my opinion, are not such that the extreme measure of appointing a guardian for her is necessary. She is entirely capable of handling her activities of daily living such as eating, dressing, grooming, shopping, banking, driving and other activities related to her personal needs and her financial affairs. The fact that she has psychological problems and a drinking problem which interfere with her understanding and appreciation of her actions at times does not in my opinion make her incapacitated. In fact she is probably similar to a number of persons we meet each day who, because of their background and psychological problems, are dysfunctional in various ways, even though they feel they are functioning properly.
"In my discussion with Dr. Triano, he advised me that based upon seeing Elizabeth on and off for two years it was his opinion that she was not incapacitated and that although she had an alcoholic problem, she was not an acute alcoholic, which could render her incapacitated.”
The essential focus of the court’s inquiry in this circumstance must be whether the petitioner has used this proceeding and the court to advance a personal vendetta against the respondent rather than a means of seeking, in good faith, a determination as to whether Elizabeth Rocco is an incapacitated person in need of the appointment of a guardian. (See, Jones v Camar Realty Corp., 167 AD2d 285, appeal dismissed 77 NY2d 939, rearg denied 78 NY2d 909, cert denied sub nom. Hanft v Camar Realty Corp., — US —, 112 S Ct 376, 116 L Ed 2d 328.)
In Steiner v Bonhamer (146 Misc 2d 10, 14), the court set forth "pertinent considerations in determining whether sanctions should be imposed” pursuant to part 130, subpart 130-1 of the Rules of the Chief Administrator of the Courts. These are:
"1. Has the 'accused’ litigant or attorney manifested an intention to harass, annoy or inconvenience his adversaries?
"2. Has the accused litigant or attorney manifested a 'pattern’ of commencing baseless claims?
"3. What communication and negotiation, if any, between *767 the parties or their counsel preceded the commencement of the action?
"4. What statutory or decisional authority, if any, has the accused litigant or attorney cited in support of his claims?
"5. Are the facts of the case clear and not in dispute or is there a complex fact pattern clouded by several versions of what happened?
"6. In balancing all of the pertinent factors and exercising the court’s discretion, what remedy, if any, do fairness and equity dictate?” (146 Misc 2d at 14.)
These "pertinent considerations”, while not all directly applicable to the instant proceeding, may serve as guidelines for the determination of whether sanctions are warranted herein, and should be addressed by the parties to the extent they can be applied to the present situation.
It should be noted that if the petitioner commenced a "sufficiently plausible” proceeding a finding of an "acrimonious feeling between the parties” will not, by itself, support a finding of frivolous context. (Matter of Schulz v Washington County, 157 AD2d 948, 950.)
In view of all the foregoing considerations the court concludes that in accordance with section 130-1.1 (d) the parties should be given the opportunity to be heard on the issue of whether sanctions should be imposed upon the petitioner, Nola Rocco, and her attorney, Arthur Olmstead, Esq., and has determined that the pending proposed orders shall be held in abeyance for 45 days to allow for submissions in accordance with the order issued herewith. Based upon the prior proceedings, including arguments and discussion on the record on May 25, 1994, no further hearing or oral argument shall be necessary, and the issue shall be determined on the prior proceedings and papers to be submitted pursuant to the order issued herewith, in satisfaction of the requirements of section 130-1.1 (d) of the Rules of the Chief Administrator of the Courts.

 It is clear that Nancy Burner, Esq., the attorney retained as trial counsel shortly before the scheduled trial, played no part in the decision to commence this proceeding and, in fact, offered the advice to the petitioner not to go forward with the trial.