■ In the Matter of LILLIAN PETTY et al., Respondents. ASTON P. LEVERS, Appellant. ROBERT GELTZER, as Court Evaluator, Nonparty Respondent. [682 NYS2d 183] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered June 24, 1997, which fixed the court evaluator's fee at $3,250, payable one half by petitioners-respondents and one half by respondent-appellant and directed each party to pay their own counsel fees, unanimously modified, on the law, the facts and in the exercise of discretion, petitioners directed to pay the court evaluator's fee in its entirety, and otherwise affirmed, without costs.

Petitioners Petty and Anderson commenced the instant guardianship proceeding pursuant to article 81 of the Mental Hygiene Law for the appointment of a guardian for the 65-year old respondent Levers. Petty is Levers's former live-in girlfriend and Anderson is Levers's cousin. Although the intimate relationship between Petty and Levers is apparently over, Petty still shares a Riverside Drive condominium apartment with Levers. Petty and Levers state that Petty owns one-half of the apartment, although the stock certificates are solely in Levers's name.

The petition alleges that Levers suffered a brain aneurism in 1995 for which he was hospitalized and received out-patient treatment. It further states that although Levers has physi-

cally recovered from his illness, it continues to effect his "short-term memory, judgment and follow-through process." Additionally, the petition alleges in conclusory terms that respondent "is easily confused" and "often forgets what he is doing or where he is going or what needs to be done." As further "evidence" of respondent's incapacity, petitioners assert, *inter alia*, that respondent expressed a desire to renew his driver's license despite current restrictions, that he was denied a passport and life insurance due to his failure to provide additional information when requested, that he misplaced $2,800 in rent money, which he found several days later, and that he failed to pay outstanding hospital bills and collect rent money from tenants.

On March 5, 1997, the IAS Court appointed respondent Geltzer as a court evaluator pursuant to Mental Hygiene Law § 81.09 (a). However, prior to the evaluation, petitioners sought to withdraw their petition. The IAS Court refused to permit withdrawal prior to an evaluation. Geltzer proceeded with the evaluation and, in his affirmation dated March 27, 1997, stated that respondent's need for a permanent guardian was "highly questionable," but a temporary guardian should be appointed to investigate "various financial matters." Inconsistent with the allegations in the petition, Geltzer found that respondent was able to care for himself with respect to personal hygiene and preparing meals, exhibited no manifestations of his 1995 illness except some memory loss and was relatively aware of his financial resources and current events.

Although the court initially expressed its intention to appoint a temporary guardian pursuant to Mental Hygiene Law § 81.23, after further communications from the parties, it directed them to discontinue the proceeding through a "so ordered" stipulation. Prior to signing such order, the court requested that both parties submit letters to the court regarding who should pay the fees of the court evaluator and Levers's counsel. Both parties did so. On June 17, 1997, the court "so ordered" a stipulation discontinuing the proceeding, and issued a separate order directing that the evaluator's fees be split equally by the parties and that each side pay their own counsel fees.

Respondent Levers argues on appeal that the court improvidently exercised its discretion in requiring him to pay half of the court evaluator's fees. We agree. Mental Hygiene Law § 81.09 (f) provides that when an article 81 petition is denied or dismissed, "the court may award a reasonable allowance to a court evaluator * * * payable by the petitioner or by the person alleged to be incapacitated, or both in such proportions

as the court may deem just." Although the petition in the instant case was withdrawn, as opposed to being denied or dismissed, the statute has been applied in circumstances where a petitioner has stated her intent to withdraw the petition, after which the court orally dismissed it (*see, Matter of Rocco*, 161 Misc 2d 760, 761 [Sup Ct, Suffolk County 1994]). Similar circumstances exist here, where petitioners initially sought to withdraw their petition and then stipulated to discontinue the proceeding at the court's direction (*see, Matter of Rennhack*, NYLJ, Jan. 6, 1998, at 23, col 5 [Sup Ct, Nassau County]).

The court improvidently exercised its discretion in directing respondent to pay one half of the evaluator's fee since the petition was insufficient on its face (*see, Matter of Onondaga County Dept. of Social Servs.*, 162 Misc 2d 733 [Sup Ct, Onondaga County 1994]). The Mental Hygiene Law requires that a petition for an appointment of a guardian must provide "specific factual allegations" as to the personal actions or financial transactions which allegedly demonstrate incapacity (Mental Hygiene Law § 81.08 [a] [4], [5]). The instant petition fails to satisfy this requirement as it consists of conclusory allegations or incidents which simply do not demonstrate incapacity. Additionally, a guardian may be appointed for an alleged incapacitated person only where the court determines that "the appointment is necessary to provide for the personal needs of that person * * * and/or to manage [their] property and financial affairs" *and* that the person agrees to the appointment or is incapacitated (Mental Hygiene Law § 81.02 [a] [1], [2]). As the court evaluator's report establishes that respondent was capable of managing his personal and financial affairs (*see, Matter of Crump [Parthe]*, 230 AD2d 850, 851), petitioners' allegations fell far short of meeting the standard for appointment. Thus, because of the weakness of the petition, the court evaluator's fee should have been borne by the petitioners in its entirety (*supra; Matter of Rocco, supra; see also, Matter of Lyles*, 250 AD2d 488, 489-490).

In light of this determination, we decline to reach respondent's constitutional arguments.

Respondent also argues that the IAS Court abused its discretion in requiring him to pay his own attorneys' fees. We disagree. While Mental Hygiene Law § 81.10 (f) permits a court to order the petitioner to pay the attorneys' fees of the alleged incapacitated person when the petition is dismissed, it appears that this provision applies only to counsel "appointed pursuant to this section" and not retained counsel (*Matter of Rocco, supra*). Although the underlying purpose of the fee-shifting

provisions of the Mental Hygiene Law, which is to discourage frivolous petitions, would seem to be equally advanced by authorizing a court to assess payment of private counsel fees (*see, Matter of Rocco, supra*, at 762), the statute does not provide for it. Any change is a matter of legislative prerogative (*see, Matter of Lyle, supra*, at 490). Accordingly, the direction that respondent pay his own attorneys' fees will not be disturbed. Concur—Sullivan, J. P., Milonas, Tom and Mazzarelli, JJ.