Matter of Peterkin (2004 NY Slip Op 50284(U))

[*1]

Matter of Peterkin

2004 NY Slip Op 50284(U)

Decided on February 17, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 17, 2004

Supreme Court, New York County
In the Matter of the Application of JOHN W. PETERKIN, Petitioner, For the Appointment of a Guardian Pursuant to Article 81 of the Mental Hygiene Law for SYLBURN A. PETERKIN, An Alleged Incapacitated Person.
Index No. 500131/03

LAURA VISITACIÓN-LEWIS, J.
 In this Article 81 proceeding, respondent Vera Johnson moves pursuant to Part 130, Subpart 130-1 of the Rules of the Chief Administrator (22 NYCRR), for legal fees in the sum of $5,797, incurred in opposing the application of petitioner John W. Peterkin for the appointment of a guardian for the person and property of Sylburn A. Peterkin, the Alleged Incapacitated Person (AIP). Petitioner, who further sought the guardianship appointment, is the son of the AIP. Respondent is the AIP's legally adopted daughter. Counsel for petitioner files an affirmation in opposition to respondent's motion for legal fees.
Also before the Court is a motion for the payment of fees in the sum of $8,250, filed by the court evaluator, Paul A. Shneyer, Esq., in accordance with Article 81.08 (f) of the Mental Hygiene Law ("MHL"). In response thereto, counsel for respondent Vera Johnson files an affirmation in conditional support, the condition being that the court assess the award solely against the petitioner. Counsel for petitioner files an affirmation opposing the court evaluator's fee request as unreasonable, to which the court evaluator replies.[FN1]
BACKGROUND AND PROCEDURAL HISTORY
Following the guardianship hearing held before me on November 17, 2003, at which testimony was taken from Dr. Norman Weiss, appearing on behalf of the petitioner; from the respondent, Vera Johnson; and from the 96-year-old AIP, Sylburn Peterkin, I found that petitioner had failed to meet his burden of establishing the need for a guardian of the AIP's property, and the application was accordingly denied.[FN2] Specifically, I found that the AIP understood that he had certain limitations in dealing with financial matters, and that he had made appropriate arrangements to permit respondent, a trusted daughter, to assist him. In addition to relying upon her to pay bills and otherwise handle his finances, the AIP had granted to respondent a power of attorney some years earlier.
Despite his advanced years and an occasional memory lapse, the AIP presented as a credible, intelligent, articulate, and fully-oriented witness. He was well-groomed, dignified, and [*2]courtly, and appeared well-cared for in all respects. His testimony, together with that of respondent, who also testified credibly, satisfied me that the concerns raised by Dr. Weiss regarding the AIP's needs were fully addressed by the assistance he received from respondent and his full-time home attendant, Loreen Fenton.[FN3]
In seeking an award of legal fees against petitioner, respondent asserts that the guardianship proceeding was unnecessary and brought in bad faith, and that the affidavit petitioner filed in support of his application was largely comprised of "scurrilous" and ultimately unproven "implications" that respondent was stealing cash and property from the AIP. Through an attorney's affirmation, petitioner responds that he commenced the guardianship proceeding because of concern that his father was not receiving proper care and supervision. Counsel's affirmation states that respondent and other family members were unwilling to provide petitioner with information regarding the AIP's condition, and cites an instance in which the AIP is said to have been missing for hours after wandering away from his home. Petitioner states that his source of this information was a sister, Francisca Peterkin.[FN4]
For the reasons that follow, respondent's application for an award of attorney's fees to be paid by petitioner is granted pursuant to Part 130, Subpart 130-1 of the Rules of the Chief Administrator (22 NYCRR), and the court evaluator's application for fees is granted pursuant to MHL §81.09 (f), and made payable by the petitioner.
 FINDINGS OF FACT
In bringing this Article 81 proceeding and seeking to be named guardian of the person and property of his father, petitioner presented incomplete, misleading, and false information, as well as ultimately unproven claims that respondent was stealing cash and property from the AIP. Thus, for example, petitioner described respondent as a "foster child" taken in by his parents, when she is actually his sister, having been legally adopted by his parents. In addition, petitioner made allegations to the effect that respondent had stolen cash and jewelry from the AIP, and charged that respondent was "encouraging [the AIP] to pay for her personal expenses because her only source of income is approximately $850 per month from Social Security...." No evidence in support of these allegations was ever adduced at the hearing. To the contrary, there was credible evidence presented by respondent regarding her ownership and management of an antique and gift shop in Tuxedo, New York, and establishing that she has never taken money or jewelry from her father. With regard to the specific charge that she had stolen $5,000 from the AIP, respondent testified credibly that when her parents were hospitalized in June 2001, she went to their home with her aunt, Ethel Springer,[FN5] to clean and to safeguard any valuables that might have been left around. During that visit, cash in the sum of $4,750 was found, and she kept these [*3]monies in her safe at home. It was only after petitioner had the AIP's accounts frozen that she began using this money to pay her father's bills and the home attendant's salary, and she has kept records of those expenditures.
In filing his petition based upon the allegations of theft and overreaching by respondent, petitioner further averred that he had no information regarding his father because respondent prevented him from calling or visiting. What petitioner neglected to mention, however, was that he was, and had been for some time, estranged from both of his parents. For example, it is undisputed that in 1988 petitioner's father, the AIP, recovered a money judgment against petitioner for $20,000, and that, months before her death in July 2003, petitioner's mother, Mabel Peterkin, commenced a will contest against him in connection with the estate of her sister, Cleaver H. Garcia. The most telling evidence of the estrangement between the petitioner and his parents is the AIP's Last Will and Testament, dated July 25, 1989, pertinent provisions of which state:
FIFTH: I give, devise and bequeath to my son, JOHN W. PETERKIN,
who is an unscrupulous, scheming and devious lier [sic], is completely
lacking in any sense of moral values, I leave ONE DOLLAR ($1.00)
DOLLAR [sic]. He schemed and lied in order to get my wife, MABEL
and I to give him a loan of TWENTY THOUSAND ($20,000.00)
DOLLARS to him and his wife, ANN. He has used all kinds of devious
means to avoid paying this loan. Also he is in arrears with interest of
TWO HUNDRED ($200.00) DOLLAR monthly payments.
 ***
 NINTH: I have intentionally and knowingly excluded my son, JOHN W.
PETERKIN from this my Last Will and Testament for reasons known to
me.
That the passage of time has not improved the AIP's opinion of petitioner is demonstrated by his views as set forth at page 3 of the court evaluator's report dated November 14, 2003:
"... he did not want his son petitioner John Peterkin to handle his financial matters. He noted that he did not trust his son with his affairs." Similar sentiments were volunteered by the AIP to the court in response to a preliminary inquiry at the guardianship proceedings:
"THE COURT: ...[F]irst I'd like to know whether you understand why we're in
court today? *** [T]ell me in your own words why that is.
THE WITNESS: Well, my son, John Peterkin, he wants to control my assets. And that's what he's trying to do. And he's been doing that for years. *** I feel that my daughter is taking care of it and she's very efficient in doing so."
CONCLUSIONS OF LAW
[*4]
1. Attorney's Fees
Pursuant to MHL §81.10[f], when a petition has been denied or dismissed, the court may direct the unsuccessful petitioner to pay the fees of counsel appointed under the statute to represent an indigent respondent. The Appellate Division, First Department, has observed that this is a "fee shifting" provision designed to discourage "frivolous petitions," but one which does not provide for payment of retained counsel (Matter of Petty, 256 A.D.2d 281 [1998]). To accord relief to an AIP who has incurred private attorney's fees in defense of a petition that is deemed to be frivolous, the courts have instead relied upon Part 130, Subpart 130-1 of the Rules of the Chief Administrator (22 NYCRR) (see, e.g., Matter of Rocco, 161 Misc.2d 760 [Sup. Ct., Suffolk Co., 1994]). In pertinent part, 22 NYCRR 130-1.1(a) provides as follows:
The court, in its discretion, may award to any party or attorney
in any civil action or proceeding before the court, except where
prohibited by law, costs in the form of reimbursement for actual
expenses reasonably incurred and reasonable attorney's fees,
resulting from frivolous conduct.
As defined in 22 NYCRR 130-1.1(c)(i), conduct is "frivolous" if:
it is completely without merit in law or fact and cannot be
supported by a reasonable argument for an extension, modifica-
tion or reversal of existing law.
Upon the evidence and the facts set forth herein, which establish that this proceeding was not brought in good faith and with reasonable justification, I find that an award of counsel fees to respondent pursuant to Part 130 is warranted. Specifically, petitioner's contention that he was solely motivated by concern for his father's well-being cannot be credited in light of his history of questionable financial dealings with his parents, and his attempt to seek the guardianship for himself, despite the estrangement and his disinheritance. That he could not otherwise obtain information about his father, if that indeed were the case, would likely have been due to his alienation from the AIP and other family members. That respondent is merely a foster child who stole from the AIP and did so because she does not earn a living, were among petitioner's discredited allegations. In short, the totality of the circumstances lead to the inescapable conclusion that petitioner acted wholly without merit in fact or law. Thus, the criteria for frivolous conduct has been met, warranting the assessment of respondent's legal fees against him, both pursuant to Part 130 and as dictated by considerations of fairness and equity (Levy v Carol Management Corporation, 260 A.D.2d 27, 34 [1st Dept. 1999]).
2. Court Evaluator's Fees
In a view shared by the court and not disputed by petitioner, respondent describes the court evaluator's services as "outstanding ... excellent, imaginative, comprehensive, cooperative and sensitive to the emotional issues raised by the instant proceeding." Petitioner's sole objection is to the amount of the court evaluator's fees, and it is a blanket one that makes no effort to address the substance or the complexity of the work performed. In fact, the court evaluator's work was made especially difficult by petitioner's serious allegations, and by his lack of candor [*5]with the court. The serious nature of the false and misleading claims contained in the petition complicated the investigative process, imposed greater responsibilities, and necessitated far more work than that ordinarily encountered by court evaluators in proceedings characterized by family conflict. Many of the hours billed were devoted to sorting out the conflicting information in interviews with family members, and in ascertaining the circumstances of the AIP's care and the status of assets claimed to have been misappropriated.
Petitioner's claims created further difficulty because the court, in response thereto, granted his application for restraints to be placed on the AIP's accounts. These restraints imposed upon the court evaluator the additional burden of moving for an interim order so that checks could be drawn on the AIP's account to meet his basic living expenses. The claims of theft also led the court evaluator to expend additional hours in having the AIP's safety deposit box opened and its contents inventoried, an endeavor that petitioner's counsel supported. Finally, the detailed and comprehensive report prepared by the court evaluator reflects the attention and work devoted to this assignment.
This court has reviewed the court evaluator's billing work sheet and finds, on the basis of all of the foregoing, that his fee application is reasonable, and should be borne by the petitioner in its entirety (Matter of Rocco, supra; see Matter of Skinner, 250 A.D.2d 488 [1st Dept. 1998]).
Accordingly, the application of respondent Vera Johnson for an award of counsel fees in the amount of $5,797, to be assessed against petitioner pursuant to Part 130, Subpart 130-1 of the Rules of the Chief Administrator (22 NYCRR), and the application of the court evaluator for fees pursuant to MHL §81.08(f) in the amount of $8,250, are granted, and it is hereby
ORDERED, that petitioner shall pay, within 30 days of the entry of this order, counsel fees to respondent's attorneys, Langer & Charles, 415 Madison Avenue, New York, New York 10017-1190, in the sum of $5,797; and it is further
 ORDERED, that if petitioner fails to pay said counsel fees within 30 days of the entry of this order, the Clerk of New York County is directed to enter judgment in favor of Langer & Charles and against petitioner, John W. Peterkin in the sum of $5,797, together with statutory interest to be computed by the Clerk; and it is further
ORDERED, that petitioner shall pay, within 30 days of the entry of this order, court evaluator's fees to Paul A. Shneyer, Shneyer & Associates Ltd., 263 West End Avenue, Suite 1G, New York, New York 10023, in the sum of $8,250; and it is further
ORDERED, that if petitioner fails to pay said court evaluator fees within 30 days of the entry of this order, the Clerk of New York County is directed to enter judgment in favor of Shneyer & Associates Ltd., and against petitioner, John W. Peterkin, in the sum of $8,250, together with statutory interest to be computed by the Clerk.
This constitutes the Decision and Order of the Court.

LAURA VISITACIÓN-LEWIS, J.S.C.
Decision Date: February 17, 2004
Footnotes

Footnote 1:The issue of fee applications was initially raised by counsel for respondent and the court evaluator at the close of the guardianship hearing. Following a bench conference, the attorneys and the court evaluator agreed to have this matter determined upon the proceedings and their submissions, without further hearing or oral argument. 

Footnote 2:Prior to the hearing, petitioner withdrew his application for the appointment of a guardian for the person of the AIP.

Footnote 3:Ms. Fenton was present in court for the proceedings.

Footnote 4:In his own description of the event, as recited in the petition, petitioner states that the AIP "...had left his residence alone, and was missing from 10:00 a.m. to 3:00 p.m. When [the AIP] arrived back home at around 3:00 p.m., he told Francis[ca] Peterkin that he went shopping, but had no bags or groceries with him." Francisca Peterkin was not present at the hearing. 

Footnote 5:Ms. Springer was present at the proceedings.