OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
A petition has been filed for the appointment of a guardian of the property of G.S., an alleged incapacitated person (hereinafter known as the person). The court, having been satisfied that the person was served with the order to show cause and petition by personal delivery at least 14 days prior to the return date, and that all necessary interested persons required to be served under Mental Hygiene Law § 81.07 were timely served with the order to show cause and petition, appointed a court evaluator, Mario Biaggi, Jr.
The hearing was held on August 6, 2007 at Split Rock Rehabilitation & Health Care Center. The hearing was conducted in the person’s room as she is ventilator dependent. However, she was able to testify clearly and articulately. Tanya Moss, the person’s social worker from the nursing home, D.R., the person’s son, and the court evaluator testified at the hearing.
Findings of Fact
The person is 69 years of age. The person presently resides at Split Rock Rehabilitation & Health Care Center, 3525 Baychester Avenue, Bronx, New York 10466.
The person was admitted to the nursing home in August of 2006. According to the social worker, the person has a close relationship with her son, D.R. The person executed a power of attorney naming Mr. R. her attorney-in-fact on March 12, 2004. In addition, she executed a health care proxy on November 26, 2005 naming Mr. R. her health care agent. The social worker was not aware that the person had executed a power of attorney and stated that a copy was not in the nursing home file. The social worker stated that the person displays short-term forgetfulness. Specifically, she forgets when she receives her Social Security payments and the amount that is in her resident account.
The social worker further stated that she was not aware that the person owned a home that was sold and is not aware of the *305 person’s assets. However, she did state that if the person has assets, she is able to make financial decisions with assistance from her son. The social worker reported that she was informed by the finance department of the nursing home that Mr. R. has not been consistent with making payments to the nursing home on the person’s behalf. She was also informed by the finance department that attempts have been made to obtain financial information from Mr. R. but he has not been cooperative. The current outstanding balance the person owes to the nursing home is over $200,000.
This proceeding was brought by the nursing home because the person’s house was sold and the nursing home is attempting to obtain the proceeds of that sale to pay the person’s outstanding nursing home bill. The nursing home’s position is that Mr. R. has not properly been using the power of attorney and, therefore, this court should revoke the power of attorney and appoint a guardian of the property.
The court evaluator conducted a direct examination of Mr. R. wherein he was asked about the person’s assets. Mr. R. reported that the person has a checking account at HSBC Bank with a balance of approximately $54,488.10. Mr. R. stated that the person jointly owned a home with her ex-husband, E.S., located in Stony Brook, New York. The house was sold and the closing took place on October 11, 2006. The sale price of the house was $370,000, the net proceeds after expenses were $348,651.03. Mr. R. stated that the person’s half share of that amount was $174,326.
With respect to the proceeds from the person’s share of the house sale, Mr. R. stated that he has sent $105,000 to the nursing home toward payment of the person’s outstanding bill. The petitioner acknowledged receipt of that amount. In addition, he has paid the person’s credit card debt which totaled approximately $42,000. The remainder of the person’s funds were deposited into her HSBC Bank checking account. Mr. R. stated that he has used the person’s funds solely for her benefit and he wants to pay for funeral arrangements and take care of his mother’s “creature comforts” before disbursing the remainder of the person’s assets to the nursing home.
When asked by the petitioner about a letter sent to him asking him to provide the nursing home with information concerning the person’s finances, Mr. R. stated that he submitted documents. However, the petitioner maintains that the proper documentation was not submitted and that Mr. R. has not been *306 cooperative with the nursing home in helping to obtain Medicaid benefits for the person.
The person stated that none of the social workers that have been assigned to her know her well enough to state that she requires a guardian. She stated that she trusts her son and that he has done an “admirable job” with her finances. The person acknowledged that she had high credit card debts and attempted to explain why. The person further stated that her son has made payments to the nursing home, even though it has not been in accordance with the nursing home’s “timetable.” She stated that she and her son were not attempting to avoid paying the nursing home debts but she does not have the money that the nursing home thinks she has. The person wants her son to continue to act as her attorney-in-fact.
Conclusions of Law
Upon consideration of the evidence submitted and the evidence adduced at the hearing, this court finds that the petitioner did not meet its burden by clear and convincing evidence that the appointment of a guardian of the property is required. The person has advanced directives in place to provide for both her personal needs and property management. The purpose for which this guardianship proceeding was brought, to wit, for the nursing home to be paid for its care of the person, was not the Legislature’s intended purpose when article 81 of the Mental Hygiene Law was enacted in 1993.
Mental Hygiene Law § 81.01 plainly states,
“The legislature declares that it is the purpose of this act to promote the public welfare by establishing a guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner . tailored to the individual needs of that person, which takes in account the personal wishes, preferences and desires of the person, and which affords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person’s life.”
Mental Hygiene Law § 81.02 states that the court may appoint a guardian for the person if the person agrees to the appointment or is incapacitated. “In deciding whether the appointment is necessary, the court shall consider . . . the sufficiency and reliability of available resources, as defined in *307 subdivision (e) of section 81.03 of this article” (Mental Hygiene Law § 81.02 [a] [2]). Mental Hygiene Law § 81.03 (e) defines “available resources” as: “powers of attorney [and] health care proxies.”
The person executed a power of attorney naming her son her attorney-in-fact. The social worker acknowledged that the person is able to make financial decisions with the assistance of her son. It has been established that it would be an abuse of the court’s discretion to revoke a power of attorney unless there is evidence that the holder of said document engaged in conduct that would justify revocation. {Matter of Isadora R., 5 AD3d 494 [2d Dept 2004].)
The petitioner failed to show that Mr. R. mishandled the person’s property or engaged in conduct sufficient to justify revoking the power of attorney. Moreover, the person reaffirmed at the hearing her confidence in her son to take care of her property. {Id.) Mr. R. adequately accounted for the proceeds of the person’s share of the sale of her house. He has paid the nursing home $105,000 thus far and intends to pay over the remainder of the person’s assets to the nursing home once he establishes a burial fund and provides for his mother’s immediate needs.
Absent any evidence demonstrating that Mr. R. has mishandled the person’s finances or otherwise engaged in conduct that would justify revoking the power of attorney, it would be inappropriate for this court to invalidate the power of attorney and appoint a guardian for the person. This court finds that the person has effectuated a plan for the management of her affairs thus obviating the need for the appointment of a guardian of her property. To the extent that the nursing home is seeking to be paid for the care it has rendered to the person, the petitioner must seek a different avenue of redress for that relief as a guardianship application is inappropriate.
Moreover, Mental Hygiene Law § 81.09 (f) states, “When a judgment denies or dismisses a petition, the court may award a reasonable allowance to a court evaluator, including the mental hygiene legal service, payable by the petitioner or by the person alleged to be incapacitated, or both in such proportions as the court may deem just.” (See also, Matter of Petty, 256 AD2d 281 [1st Dept 1998]; Matter of Geer, 234 AD2d 939 [4th Dept 1996].) This court finds that any costs incurred by the petitioner in bringing said petition as well as the fees of the court evaluator shall be borne by the petitioner. The court evaluator is directed to submit an affirmation of legal services.
*308 Accordingly, the application for the appointment of a guardian of the property is denied and the petition is hereby dismissed.
The order of the court which directed that the person’s assets be frozen pending this court’s decision is hereby lifted.